**DAEHLER et v PORTSMOUTH (city) et**

Ohio Appeals, 4th Dist, Scioto Co

Decided July 20, 1932

Arthur H. Bannon and A. Z. Blair, Portsmouth, for plaintiffs.

W. L. Dickey, City Solicitor, and Arnold Schapiro, Assistant City Solicitor, Portsmouth, for defendants.

## BY THE COURT

The plaintiffs, by an amended petition, seek to enjoin the collection of an assessment for sewage purposes, levied upon the lands described in the pleadings, upon various grounds. It is unnecessary to recite here the charges made in the amended petition. Their nature, so far as is necessary, will appear from the disposition here made of the questions raised.

The plaintiffs claim that the contract for the improvement was illegally entered into and for that reason it can not form the ground work of a lawful assessment. We do not find this claim to be fully supported by the evidence. The estimate filed prior to the passage of the resolution of necessity for the improvement provided in its item 23 for 21,300 pounds of reinforcing steel at an estimated cost of five cents per pound. With this as the sole item relating to reinforcing steel in the estimate the estimated cost of the improvement was $183,559. It appears that in the performance of the contract there was required some half million more pounds of steel not referred to in the estimate and that there was paid for this additional steel something like $45,000. The plaintiffs claim that this situation warrants the court in holding that the contract as a whole was void. Upon this character of improvement the law does not require that a contract be let within the estimated cost and if an extra expenditure is provided for in the plans and specifications, and contemplated by the contract and the price fixed therefor, the contract itself will be sustained. **Portsmouth v Nicola Building Co., 106 Oh St 550.**

In this case the specifications were obscure and contradictory. By section 62 thereof it seemed to be particularly provided that the amount of reinforcing steel stipulated for should be included in the price to be paid per lineal foot for the construction of concrete pipes, and that the contractor was to be compensated therefor under items 11, 12, 13 and 14 of the esti-

mates. Section 310 provided generally that the contractor should furnish all materials except as specified. Section 313 seemed to provide particularly that the contractor should furnish all the necessary material. In section 318 it is said that reinforcing steel should be paid for under item 23, and under that item it might be said that the cost of the steel was not included in furnishing the material and laying the pipe. Other contradictions appear in the specifications, but as they were prepared by the city and not by the contractor they would have to be construed against the city, and the practical construction given by the parties at the time was that the contract obligated the city to pay for the half million pounds of steel at nine cents per pound because that was the contract price per pound for the 21,300 pounds to be otherwise used on the job.

Under the authority referred to the contract as a whole can not be said to be illegal. But from the fact that the contract was enforcible against the city it does not follow that an assessment can be made against the property owners for the entire cost of the improvement. §3816 GC requires that plans, specifications, estimates and profiles of a proposed improvement shall be on file prior to the consideration by council of the passage of the resolution referred to. In this case, as already pointed out, the estimate provided for 21,300 pounds of reinforcing steel and as already indicated something like 500,000 more pounds were actually employed. It is to be observed that the 21,300 pounds was not a faulty estimate of the amount of steel to be used for that was the amount that would be required in other parts of the improvement and had no relation to the larger quantity of steel required in the construction of the main concrete sewer. We have, therefore, a situation not where a miscalculation was made of the amount of steel required in the construction of the concrete sewer but an entire omission of that steel from the estimate. Under the authority of **Kasch v Akron, 100 Oh St 229,** we hold that the failure to estimate this important element of the construction cost, while possibly resulting in an entirely legal obligation so far as the city was concerned, was an element of the cost that could not enter into the assessment against the property owners, who had no knowledge and could have had none that the estimated cost of $183,559 was in effect an estimate of but about seventy five per cent of the actual cost of the proposed improvement. We are further of the opinion that not only was an estimate wholly lacking but that the specifications in this regard were so contradictory as to in effect

constitute no specification at all as to this element of construction. It follows, therefore, that so far as this assessment covered the cost of the steel that went into the reinforcement of the concrete sewers it was illegal and to that extent would have to be enjoined.

Plaintiffs claim, however, that the property described in the petition is not subject to assessment for sewerage because as to sanitary sewerage the property at the time of the improvement was adjacent to a sewer that would have furnished them with an outlet for sanitary sewage if one was desired, and that the topography of the land was such that the land had no need of a storm sewer. The lands in question constitute a large tract upon the side of a hill. It has not been improved in any way. There are no buildings thereon. It is not cultivated. No division of it into lots has been made nor are there any streets through it. The plaintiffs have acquired a small strip giving them an outlet on Kinneys Lane. Most of the land is steep and the water easily runs from the surface onto the low lying lands below. The claim of the plaintiffs is that under the doctrine of **Blue v Wentz, 54 Oh St 247,** their land enjoys the right of casting its surface water on the land below and that this is a property right already vested in them and for which they are not bound to pay. The authority of the case referred to can not be doubted in its application to drainage in a rural district. The same doctrine is adhered to in **Mason v Commissioners, 80 Oh St 151,** wherein, however, attention is called to the fact that a different rule may obtain in a municipality where the problems of sewerage are more complicated. In **Ford v Toledo, 64 Oh St 92,** there was a tract of upland enjoying natural drainage but the Supreme Court sustained an assessment for a general sewerage system on the ground that although the upland might not need surface drainage, and while its owners felt that there was no need for sanitary drainage the public and not the owners were the judges of the need of sanitary sewerage, and the fact that sanitary sewerage was deemed necessary by the city was a sufficient reason for sustaining an assessment for general sewerage purposes. This authority and its principle was reaffirmed in **Cincinnati v Polster, 96 Oh St 155.**

Plaintiffs claim, however, that the city derives no support for the assessment from the fact that the improvement affords sanitary drainage for the reason that at the time this improvement was made this particular property abutted on Kinneys Lane where there was a sanitary sewer running to the Scioto River, and that under §3819 GC

the property was exempt because it was already supplied with that facility. In our view no question is thus raised for determination by a court. This property was not connected with the Scioto sewer. The property had, pursuant to the provisions of §3872 GC, been placed in a certain sewerage district. The city council had determined that that district needed additional sewerage facilities. It was of the view that the Scioto system could not take care of the present and future needs of the neighborhood in which the plaintiffs' property was located. We can not say that council abused its discretion in so determining. We can not say now that even though the Scioto sewer could at this time carry an additional load that it could carry the increased load necessary when the plaintiffs' property at some future time should be improved. We consider it to have been within the jurisdiction of the council to determine the lines of the sewer districts and what sewerage facilities were required to meet what §3871 GC describes as "the present and prospective needs and interests of the whole corporation." We conclude that the plaintiffs' property is not, therefore, exempt from assessment.

From the fact, however, that the property was assessable it does not follow that the particular assessment in this case can be sustained. There is a prospective need of this property for sanitary sewerage. The council could so determine but it could not determine more than that. It could not determine that it has a present need for the sewerage for the undisputed facts are against that view. The assessments in this case were levied by acreage. The assessable acreage of the plaintiffs was assessed at $556 per acre. Other property having a present need for sewerage and immediately adjacent to the system was assessed at a considerably less sum per acre. It appears to us manifest that a benefit that is necessarily prospective is not of equal value with a benefit immediately enjoyable and that it is an abuse of the power of assessment that overlooks that difference. When it was argued to the Supreme Court that property ought not be assessed for an improvement because the improvement could not be immediately utilized that claim was properly denied, but in denying that court in Ford v Toledo, supra, said:

"To authorize an assessment for sewer purposes it is not necessary that the property should have immediate need for the use of the sewer."

but
"The length of time the ground may probably remain vacant only goes to the urgency of the need and the **measure of the benefit.**"

It is apparent that the assessors of the benefits in this case wholly failed to take into consideration the fact that it might be years before there is any occasion for this property to be connected with the sewer and before, therefore, any actual benefits can accrue to this property by reason of the improvement, and that they further failed to consider the fact that the owners would be subject to great additional expense whenever, if at all, they found it desirable to develop their property and avail themselves of this facility. This principle was followed by the Circuit Court of Cuyahoga County in **Munz v Myers, 23 O. C. C. (n.s) 190,** a case that was affirmed by the Supreme Court without report in **90 Oh St 383,** whose reasoning we follow.

We find, therefore, that the assessment levied upon the plaintiffs' lands was arbitrarily made without regard to actual benefits, that compared with other assessments in the same area it obviously resulted from the application of some arbitrary rule that ignored the fact that at the time the assessment was made the accruing benefits would be long deferred, and that the plaintiffs to ever receive the benefits for which they were to pay would themselves be put to an additional expense in building an extension through their property to Kinneys Lane. Because the assessment for this reason was not lawfully made its collection is enjoined.

Decree for plaintiffs.

MAUCK, PJ, MIDDLETON and BLOSSER, JJ, concur.