**.WEIR et v HUDSON (village) et**

Ohio Appeals, 9th Dist, Summit Co

No 2928.    Decided Nov 7, 1937

Arthur P. Gustafson, Cleveland, and Luther Day, Cleveland, for appellants.

H. A. Sullivan, Village Solicitor, Akron, A. J. Russell, Pros. Atty., Akron, and W. A. Spencer. Asst. Pros. Atty., Akron, for appellees.

MONTGOMERY, PJ, SHERICK and
LEMERT, JJ, (5th Dist) sitting
by designation.

**OPINION**

By SHERICK, J.

This is an appeal on questions of law and fact, and is submitted in this court upon the record below supplemented by additional evidence. The action is by nine property owners of the Village of Hudson to enjoin the collection of and to declare void certain special assessments levied against their respective properties to pay the cost in part of the construction of a trunk sewer within the corporation.

The assessment is attacked upon seven grounds: the first of which is that appellants' lands derive no benefits whatsoever from the improvement. This claim is summarily disposed of with remark that it is inconsistent with appellants' third position, hereinafter to be stated, wherein it is conceded that a potential benefit does in fact exist.

As a second reason for a right to the relief sought, it is maintained that the assessment is unlawfully levied by virtue of the fact that the notice required by law to be given the affected parties was not made in accordance with the statutes.

The five remaining complaints will be grouped and considered as the third ground. It is said that the assessments levied upon appellants' lands are in excess of any potential benefits received; that appellants have received no actual benefits from the improvement; that the assessments are not uniform and in proportion to the benefits; that certain lands actually benefited are not assessed at all; and that remote portions are assessed at the same rate as land adjacent to or abutting upon the improvement.

We shall first consider the appellants' second claim.

It is remembered that council's legisla-

tion in this instance has to do with the installation of a sanitary trunk sewer in accordance with a preadopted plan, and the levying and collection of assessments in created districts, according to benefits, to pay the costs thereof. The pertinency of this remark will hereinafter become apparent.

Appellees contend that the stipulated facts disclose that the resident appellants, five of whom the record shows to be such, were served personally with a notice of the resolution of necessity, and that service was otherwise affected by posting notices in five public places in the village, theretofore designated by council. At the time no newspaper was published in their village. It is said that this is proper notice in accordance with §4232, GC. This is the general section pertaining to notice of many village matters required to be published. Appellees also advance §3834, GC. This Code provision has to do with declaring when certain special assessments are deemed valid and binding. The second sentence therein is in this language: "In the construction of sewers, excepting main or district sewers, notice of the passage of the resolution therefor shall be made in the manner hereinbefore provided." This section is found in that portion of the Code which has to do generally with assessments of various character.

On the other hand, appellants assert that §3878, GC, must be and is the governing section. This Code provision is found under the subtitle "Sewers." It contemplates within its terms the following of an adopted sewer "plan" in its entirety, or a portion thereof within certain established districts. The section concludes: "and shall cause the resolution to be published once a week for not less than two nor more than four consecutive weeks in one newspaper of general circulation in the corporation."

By its Code position and its terms, this section prescribes how such sewer assessment legislation shall be published. It is a section specific and not general. It is noted that the section does not say that the newspaper must be one published within the village, but that it shall be one "of general circulation in the corporation." Surely the principal Akron papers would have met that requirement.

It has long been established that, where a special statute contemplates a certain procedure in a given instance it shall govern and supercede a general statute which applies to diversified matters. If this were not true, the language of a special act would of necessity be considered but mere surplusage. Turning to §3834, GC, relied upon in part by appellees, it is significant that the legislature wrote therein an exception "excepting main or district sewers." This clearly indicates that the general law should not apply, because it was otherwise provided for in §3878, GC.

When a charge is to be placed upon one's property by special assessment, the law requires that it shall be done in accordance with certain rules. These procedural steps must be strictly followed. It may not be said that some other manner is better or more convenient. If that were true, the limit of variance might be man's ingenuity, and a property owner might never know upon what he should or could rely. As we understand it, the matter of proper notice is a condition precedent to the exercise of municipal power to levy assessments. The notices given in this controversy were not given in accordance with the law applicable.

Coming next to a determination of the third ground, it appears that for some reason—whether it be inadequacy of the old Ellsworth donated sewer, or the continuing cost of elevating sewage which would not flow by gravity, or otherwise—council resolved that a new main or trunk line sewer should be constructed within District No. 3, in accordance with the official plan previously adopted. It is evidenced by the village engineer that the natural drainage of Hudson is along the bed of Brandywine creek, which is located in District 3. The trunk sewer was constructed along this course. It is also in evidence that this trunk sewer is now or eventually will become the principal outlet for all Hudson's sewage.

For the purpose of assessment, District 3 was divided into three zones. Zone 1 lies north of the sewer. Its assessment is $7.50 an acre. Zone 2 is a strip 200 feet wide on each side of South Main Street, which extends south from the sewer 3000 or more feet. South Main Street has no sewer. Along this portion of the street are but fourteen residences, among which are included the properties of the appellants. This zone is assessed $35 an acre. The third zone is all the remainder of District 3. It is assessed the sum of $27 an acre.

Zone 3 contains much farm acreage. The appellants' lands are of that character. They are long narrow strips which extend back from South Main Street from 675 to 2000 feet in the cases of the Smith and Bailliere lands. It is shown that the rear half or thereabouts of these lands slopes to the south and east and could not be sewered by gravity into the trunk sewer. Ravenna Street is in Zone 3. It had previously been sewered but could not be or was not allowed to be used until the trunk sewer was installed. It was then connected up and put to use. Properties along this street received an actual present benefit. They were assessed $27 an acre. We also find that properties on Brown and Clinton Streets in Zone 3, partially built up and in close proximity to the trunk sewer, have the same assessment as do all that portion of appellants' lands located in zone 3, and a half to a mile distant from the trunk sewer by way of South Main Street. It also appears that 81 acres in the northeast part of Hudson were not specially assessed, upon the theory that the Ellsworth donation or old Brown Street sewer served this territory which already had sewers and hence was not benefited. Yet the fact is that since the completion of the trunk sewer considerable of this 81 acres' sewage now flows through the new sewer. It is shown that since the sewer installation, the sewer on another street in the 81 acres has been extended, and that sewage from it now flows into the newly provided outlet. Yet this territory was not assessed.

The concluding portion of §3879, **GC**, has been disregarded. It is therein provided that "the cost of the construction of any main sewer which serves as a common outlet for two or more districts shall be apportioned between the districts, and the cost assessed on the lots and lands in the respective districts in proportion to the benefits accruing thereto."

Under the state of the record before us, it clearly appears that an arbitrary and inequitable plan of assessment was pursued, with little or no regard to the fact that some lands sustaining a present actual benefit were not assessed at all, or were assessed in a sum equal to land that secured but a potential future benefit, and that could only enjoy the sewer at great expense. The 81 acres received an actual benefit in some degree by having a practical gravity outlet for its sewage. No regard seems to have been taken as to elevations and the topography of the lands in southern Zone 3, or a consideration of its distance from the sewer. No attempt is made to lessen assessments on the remote lands. Neither is it considered that portions of the 81 acres are securing their sewers for nothing, save the city's portion of the cost of the trunk sewer.

It is the judgment of this court that the second and third reasons assigned are well taken and that the prayer of the petition should be granted. The assessments against their lands are unjust and arbitrary. Deshler v Portsmouth, 45 Oh Ap 15 (12 Abs 385), Munz v Myers, 34 O.C.D. 201, 23 O.C.C. (N.S.) 190, affirmed without report in 90 Oh St 383; Mallo v Dover, 36 Oh Ap 84 (7 Abs 620), and Falor v Mong, Auditor et, 47 Oh Ap 442 (17 Abs 291), are in point and may be pursued with profit.

The injunction is allowed as prayed for.

MONTGOMERY, PJ, and LEMERT, J, concur.